IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

**UNITED STATES of AMERICA,**

v.                                       CRIMINAL CASE NO.: 4:02CR93
                                          CIVIL CASE NO.:     4:07CV65

**OSWAYNE L. HYDE,**

    DEFENDANT AND PETITIONER.

## OPINION and ORDER

This matter is before the Court on Defendant Oswayne L. Hyde's ("Hyde" or "Defendant") Motion under 28 U.S.C. § 2255 ("§ 2255") to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. Doc. 19 (Motion filed subject to defect on July 11, 2007).[1] For the reasons that follow, claims two (2) and three (3) as set forth in Defendant's § 2255 Motion and accompanying Memorandum are **DENIED**. The Court reaches no conclusion as to claim one (1) at this point in the proceedings.

### I. PROCEDURAL AND FACTUAL HISTORY[2]

On July 31, 2002, Defendant was indicted for Distribution of Marijuana, in violation of 21 U.S.C. § 841(a)(1) (Count 1), and Distribution of Cocaine Base, in violation of 21 U.S.C. § 841(a)(1) (Counts 2 and 3). Doc. 1 (Indictment). An arrest warrant was issued on August 1, 2002, and Defendant was eventually arrested on November 25, 2005. Doc. 2 (FED. R. CRIM. PROC. 5(c)(3) Documents from Southern District of Florida filed December 2, 2005); Docket No. 4:02cr93.

---

[1] Defendant failed to sign under oath that his motion was true and correct. Doc. 19.
[2] This section does not necessarily include the entire procedural and factual history in this case, but rather notes events and information relevant to the issues before the Court.

On February 1, 2006, Defendant pled guilty to Counts Two (2) and Three (3) of the indictment, and entered into a Plea Agreement with the Government. Doc. 7; Docket No. 4:02cr93. As part of Defendant's Plea Agreement, Defendant waived his "right to appeal the conviction and any sentence within the maximum provided in the statute of conviction or the manner in which that sentence was determined . . . in exchange for the concessions made by the United States in this plea agreement." Doc. 7 at 4. Moreover, Defendant waived his right to a jury trial on sentencing factors. Doc. 7 at 4. Incident to Defendant's guilty plea, Defendant signed a Statement of Facts, setting forth certain events substantiating the offenses, which was filed on February 1, 2006. Doc. 8. At hearing, Defendant testified under oath that the Statement of Facts "truly and accurately depict[ed] what [he] did" and did not indicate that any information should be added to the Statement of Facts. Doc. 15 at 3, 17-19 (Transcript of Plea Hearing on February 1, 2006).

On April 19, 2006, Defendant filed his Position with Respect to Sentencing Factors, stating he had no objections to the Presentencing Investigation Report ("PSR") other than to correct a date regarding Defendant's employment history in the report. Doc. 11; See PSR at A-1. Defendant's exception to the date of his employment was incorporated into the PSR. PSR at 13, A-1.

Prior to the sentencing hearing, the Court received Defendant's PSR, which discloses as follows. On March 2, 2002, Defendant "told [a confidential source during a conversation] that he had a quantity of marijuana that he was attempting to sell." PSR at 3. On April 12, 2002, after discussions on April 10, 2002, Defendant sold "111 grams of 'crack cocaine.'" PSR at 4-5. "On April 26, 2002, the [confidential source] and the defendant negotiated the sale of 9 ounces of 'crack' cocaine" and later consummated the sale on that same day. PSR at 5. In fact,

Defendant sold "245.7 grams of 'crack' cocaine" on that day. PSR at 5. No information exists in the PSR or Statement of Facts to show that Defendant was induced into selling crack cocaine by any government agent. PSR at 3-7; Doc. 8. "On July 31, 2002, a Federal arrest warrant was issued for the defendant." PSR at 5. Defendant "contacted agents later [on August 1, 2002], and told the agents that he was out of town, but he would meet with the agents later that date." PSR at 5. Later on August 1, 2002, an attorney for Defendant contacted the agents and was advised "of the nature of the investigation." PSR at 5. On August 2, 2002, the agents spoke with the attorney again, who instructed that he advised Defendant, his client, "to turn himself in to the authorities." PSR at 5-6. Defendant did not turn himself in to authorities. PSR at 6. Over three years later, on November 25, 2005, Defendant was apprehended in Florida despite refusing to provide his name to authorities and possessing an identification card with his picture and a fictitious name. PSR at 6. Authorities were alerted to Defendant's true identity by his son. PSR at 6. Despite failing to turn himself in to authorities, and being at large for over three (3) years after the arrest warrant was issued, Defendant was not penalized for obstructing justice and was granted a complete three-point reduction for accepting responsibility. PSR at 6-7. Regarding his conduct, Defendant "admitted to the Statement of Facts and advised that he sold the drug for quick financial gain." PSR at 6-7. As noted, Defendant did not dispute any of these facts in his sentencing pleading. Doc. 11; See PSR at A-1.

On May 4, 2006, a hearing was convened and Defendant was sentenced to ninety (90) months to be followed by a five (5) year term of supervised release for both Count Two (2) and Count Three (3), to run concurrently. Doc. 13 at 1-3 (Judgment in a Criminal Case filed May 11, 2006). Also, pursuant to the Plea Agreement, the Government moved to dismiss the remaining count of the Indictment, and the remaining count was dismissed by the Court. Doc. 13 at 1; Doc.

7 at 6. At the hearing, Defendant was sworn and testified that he reviewed the PSR, discussed it with his attorney, and believed the report was accurate regarding "the particulars of the offense and [his] background." Doc. 16 at 2-3 (Transcript of Sentencing Hearing on May 4, 2006). Defendant further testified that the United States Sentencing Guidelines ("Guidelines") were "properly computed," and understood the Guidelines recommended a sentence of between eighty-seven (87) and one hundred and eight (108) months. Doc. 16 at 3. Neither party presented evidence at the sentencing hearing. Doc. 16 at 4. The Government's argument focused on the amount of crack cocaine Defendant sold, the short period of time over which Defendant was able to resupply the buyer with a substantial quantity of crack cocaine, Defendant's several attempts to evade apprehension and prosecution for the charges in question, and the difficulty of the United States Marshal's Service in apprehending Defendant on these charges. Doc. 16 at 5-6. In response, Defendant's attorney countered regarding the latter points made by the Government stating:

> [T]here had not been anything served on him. He was apparently aware of the process that was outstanding for him, and we are not saying that he was not. But he hadn't had anything served on him at the time that he left the area. During the time that he was a fugitive, he did not pick up any new charges. There is no evidence that he continued to deal with drugs or have any association with folks who were dealing drugs. In fact, the evidence is and what is contained in the presentence investigation report, is that he was working during that time as a caterer and was supporting himself and his family, as appears from the record that he had been prior to that. He has always, as you see from that record, that he was always been employed, most recently in the restaurant business where he owned a couple of restaurants on the Penisula. As I said before, supported his wife and his children. And then when he did leave the area, he continued to do that in the same type of business.

Doc. 16 at 7. Attorney for the Defendant further argued regarding Defendant's three (3) year hiatus after the arrest warrant was issued that Defendant had been cooperative since being detained. Doc. 16 at 8. Respecting Defendant's choice to distribute cocaine base, Defendant's attorney asserted, "He was caught in a situation where finances were bad for him, and he made a

terrible error in judgment in electing to use drug trafficking as a way to resolve that problem." Doc. 16 at 9. As Defendant's allocution, Defendant presented a letter to the Court, which the United States included in its Response to Defendant's § 2255 Motion. Doc. 16 at 12; Doc. 22, Ex. A (Typed Letter from Oswayne Hyde dated May 4, 2006). In Defendant's letter to the Court, Defendant admits to making "a mistake," and explains his inability to pay his bills caused him to sell drugs. Doc. 22, Ex. A ("This is what lead me to sell drugs, trying to balance my bills."). At no point in his letter did Defendant blame his drug dealing activities on any government agent, nor did Defendant dispute the facts in the PSR regarding his actions after learning of the indictment filed against him. Doc. 22, Ex. A. Additionally, neither Defendant, when given the opportunity to address the Court, nor his attorney, countered any of the facts regarding these points. Doc. 16.

In sentencing Defendant, the Court applied the safety valve provision allowing Defendant to be sentenced below the mandatory minimum sentence of one hundred and twenty (120) months, and concluded "were it not for the fact that he was a fugitive for this period of time, the Court would approve the 87 month sentence is appropriate." Doc. 16 at 12. The Court sentenced Defendant to a period of incarceration of ninety (90) months on each count to be served concurrently, in addition to imposing other measures. Doc. 16 at 13-15.

Defendant did not appeal his conviction or sentence. Docket No. 4:02cr93.

On May 21, 2007, upon motion by Defendant, the Court extended the time for Defendant to file his § 2255 Motion. Doc. 18 (Order entered May 21, 2007); Doc. 17 (Motion filed May 3, 2007). On July 11, 2007, Defendant filed his § 2255 Motion subject to defect, and a supporting Memorandum. Doc. 19 (Motion); Doc. 20 (Memorandum). While Defendant failed to sign and swear to the contents of his Motion, Defendant acknowledged in his supporting Memorandum,

which contains the substance of his arguments, that his statements were "subject to the penalties of perjury" before signing the same. Doc. 19; Doc. 20 at 4. Accordingly, the Court considers Defendant's § 2255 Motion as properly filed. In Defendant's Memorandum, Defendant claims three bases for relief:

1. Defendant's attorney was constitutionally ineffective as counsel for failing "to file a direct appeal after being requested to do so by [Defendant] and his family;"
2. Defendant's attorney was constitutionally ineffective for failing "to object to the court's finding that he was a fugitive;" and
3. Defendant's attorney was constitutionally ineffective for failing "to investigate and present a sentencing entrapment defense."

Doc. 20 at 1-4. The Court now reaches Defendant's second and third claims for relief, while making no ruling on Defendant's first claim for relief at this time.

On November 16, 2007, the United States filed its Response to Defendant's § 2255 Motion. Doc. 22. On December 26, 2007, Defendant filed his Reply brief. Doc. 23.

## II. Legal Principles

### A. Procedural Requirements

A collateral challenge to a conviction or sentence, such as a motion pursuant to § 2255, "may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982) (citations omitted). Accordingly, for a claim to be viable through a § 2255 petition, it must be raised on direct appeal; however, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." Frady, 456 U.S. at 162, 165; United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999), cert. denied, 529 U.S. 1010 (2000). Similarly, where a contention was not contemporaneously objected to or raised before the trial court, the claim is properly denied as a collateral challenge. Wainwright v. Sykes, 433 U.S. 72,

90-91 (1977). The contemporaneous objection rule is founded by "society's justified interests in the finality of criminal judgments." Frady, 456 U.S. at 175.

However, there are several narrow exceptions to the contemporaneous objection rule. First, the claimant may show "cause" excusing his procedural default, and "actual prejudice" resulting from the complained of action. Frady, 456 U.S. at 167 (citing Wainwright, 433 U.S. at 90-91); Mikalajunas, 186 F.3d at 493 ("The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel."). Second, the petitioner may show, by a greater standard of proof,[3] a constitutional violation resulted in the conviction of a person "actually innocent" of the substantive offense or regarding sentencing in a capital trial. Dretke v. Haley, 541 U.S. 386, 393 (2004) (citations and internal quotations omitted).[4] Regarding a claim of actual innocence of the substantive offense, the petitioner must show he "did not commit the crime of which he was convicted," i.e., he is factually innocent. Mikalajunas, 186 F.3d at 494. Third, the Defendant may prove ineffective assistance of counsel "either as a ground for cause [under exception one] or as a free-standing claim for relief." Dretke, 541 U.S. at 394; United States v. Defusco, 949 F.2d 114, 120-21 (4th Cir. 1991).

Presently, Defendant did not file a direct appeal, and contends his attorney did not file an appeal despite the requests of Defendant and his family. Doc. 19; Doc. 20 at 1; Docket No. 4:02cr93. Moreover, in each of Defendant's claims, Defendant asserts his attorney was

---

[3] "[I]n order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence." Mikalajunas, 186 F.3d at 493.

[4] The Fourth Circuit has further held that the actual innocence exception "applies in noncapital sentencing only in the context of eligibility for application of a career offender or other habitual offender guideline provision," and not regarding other sentencing mistakes. Mikalajunas, 186 F.3d at 495.

constitutionally ineffective as bases for relief. Doc. 20. Accordingly, the Court assumes for the purpose of ruling on Defendant's second and third claims that each claim is procedurally proper.

B. Standard of Review

In a § 2255 claim, the petitioner bears the burden of proof, and must establish his claim(s) by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam) (citations omitted). The Court may refuse to grant a hearing if the "files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255 ¶ 2; United States v. Yearwood, 863 F.2d 6, 7 (4th Cir. 1988) (citations omitted).

Under § 2255, the defendant may claim one or more of the following grounds for relief:

1. A violation of the Constitution or laws of the United States;
2. The Court was without jurisdiction to impose such sentence; or
3. The sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255 ¶ 1. Regarding an alleged non-constitutional error of law, the claimed error must constitute "a fundamental defect which inherently results in a complete miscarriage of justice" to be cognizable in a § 2255 petition. United States v. Addonizio, 442 U.S. 178, 185 (1979) (citation omitted). Additionally, the clause that provides, "the sentence . . . is otherwise subject to collateral attack," allows for "claimed errors of fact." Addonizio, 442 U.S. at 185-86. However, a claimed error of fact must be "of the most fundamental character, that is, such as rendered the proceeding itself irregular and invalid." Addonizio, 442 U.S. at 186 (citation omitted). Moreover, the Fourth Circuit has cautioned against reviewing the sufficiency of the evidence upon a § 2255 motion, stating, "[p]risoners adjudged guilty of crime should understand that 28 U.S.C. § 2255 does not give them the right to try over again the cases in which they have been adjudged guilty." Taylor v. United States, 177 F.2d 194, 194 (4th Cir. 1949) (per curiam);

Miller, 261 F.2d at 547 ("[T]he point raised goes to the sufficiency of the evidence which can not be challenged under Section 2255.") (citation omitted).

Lastly, as Defendant is proceeding pro se in this matter, his filings are entitled to a more liberal standard of review. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), cert. denied, 439 U.S. 99 (1978).

### C. Ineffective Assistance of Counsel

In Strickland v. Washington, 466 U.S. 668, 671 (1984), the Supreme Court of the United States "consider[ed] the proper standards for judging a criminal defendant's contention that the Constitution requires a conviction or [] sentence to be set aside because counsel's assistance at the trial or sentencing was ineffective." In order for a defendant to show his attorney was constitutionally ineffective, the defendant must prove counsel's performance was both deficient and that his "deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. In weighing this claim of attorney ineffectiveness, which essentially "is an attack on the fundamental fairness of the proceeding whose result is challenged," the Court "must consider the totality of the evidence before the judge or jury." Strickland, 466 U.S. at 697, 695.

Respecting whether an attorney's performance is deficient, the defendant "must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Moreover, the Court must weigh the attorney's performance under a "highly deferential" standard. Strickland, 466 U.S. at 689. The Court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Counsel's actions are strongly presumed to fall "within the wide range of reasonable professional assistance" and to be considered a part of the attorney's strategy

in the case. Strickland, 466 U.S. at 689 (citation omitted). An attorney has an obligation "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. Whether an attorney reasonably declines to undertake an investigation "may be determined or substantially influenced by the defendant's own statements or actions." Strickland, 466 U.S. at 691. Specifically, if a defendant gives his attorney reason to believe that a certain inquiries "would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." Strickland, 466 U.S. at 691.

Regarding the second prong of the analysis, prejudicial effect, Defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

### D. Entrapment

As Defendant's third claim for relief from his sentence, he claims he was entrapped by the Government into committing the crimes to which he pled guilty. Doc. 20 at 2-3; Doc. 7. "An entrapment defense has two elements: government inducement and the defendant's lack of predisposition to commit the crime." United States v. Sligh, 142 F.3d 761, 762 (4th Cir. 1998) (citing United States v. Daniel, 3 F.3d 775, 778 (4th Cir. 1993)). As an entrapment defense is an affirmative defense, a defendant must first "'produce more than a scintilla of evidence that the government induced him to commit the charged offense.'" Sligh, 142 F.3d at 762 (quoting Daniel, 3 F.3d at 778). After the defendant meets its initial burden, "the burden shifts to the government to prove beyond a reasonable doubt that the defendant was predisposed to commit the crime." Sligh, 142 F.3d at 762 (citation omitted). Inducement is more than solicitation, and

"involves elements of governmental overreaching and conduct sufficiently excessive to implant a criminal design in the mind of an otherwise innocent party." Sligh, 142 F.3d at 763 (citing Daniel, 3 F.3d at 778). The mere "provision of an opportunity to commit a criminal act" is not sufficient conduct to establish inducement. Daniel, 3 F.3d at 778.

### III. ANALYSIS

#### A. Second Claim: Fugitive for Three Years

In Defendant's second claim, he contends "counsel was ineffective for failure to object to the court's findings that [he] was a fugitive . . . [which gave Defendant] 3 months for a finding . . . . [Defendant] did not plea to or was found guilty of by a jury." Doc. 20 at 2. Defendant's argument is without merit for several reasons. First, the Court's conclusion regarding Defendant's fugitive status is well supported by the facts as set forth in the record. Doc. 1; Doc. 2; PSR at 3-6. Second, Defendant waived his right to a jury trial on sentencing factors pursuant to his Plea Agreement. Doc. 7 at 4-5. Third, the Court's conclusion that Defendant was a fugitive for three (3) years did not result in any increase in his Guidelines calculation, but rather was a factor that the Court considered in sentencing Defendant. Fourth, Defendant's attorney ably and effectively mitigated the agreed facts which led to the Court's conclusion that Defendant was a fugitive. Doc. 16 at 7-8. Thus, Defendant's counsel did argue the point Defendant now raises, did so effectively, and was not defective in that regard. Fifth, Defendant has not presented any evidence to satisfy his burden to prove his claim by a preponderance of the evidence, nor has he alleged any evidence exists to prove his contention. Doc. 19; Doc. 20; Doc. 23. Lastly, the Court concludes Defendant's attorney was not defective regarding his handling of this point of contention, and determines that Defendant has not shown that any deficiency in

counsel's performance was so poor as to undermine the Court's confidence in the final outcome of the proceeding.

Accordingly, for these reasons, Defendant's second claim for relief is without merit and is **DENIED**.

### B. Third Claim: Sentencing Entrapment Defense

As Defendant's third claim for relief, Defendant contends his attorney "fail[ed] . . . to investigate and present a sentencing entrapment defense." Doc. 20 at 2-3. Specifically, Defendant argues the Court would have been persuaded to sentence Defendant to a lighter sentence because the law enforcement agents failed to arrest Defendant after his initial involvement in a sale of marijuana, rather than waiting for him to consummate several sales of cocaine. Doc. 20 at 2-3. Defendant's argument on this point is also without merit for a number of reasons. First, Defendant has neither established nor alleged any evidence which showed the government induced him to commit the crimes to which he pled guilty. Doc. 19; Doc. 20; Doc. 23. Moreover, the record conclusively shows that Defendant's criminal scheme was of his own making, and was not formulated by the Government. PSR at 3-7; Doc. 22, Ex. A ("I would like to begin this letter admitting I have made a mistake. . . . This is what lead me to sell drugs, trying to balance my bills."). There is simply no evidence to support the conclusion that the government overreached or engaged in "conduct sufficiently excessive to implant a criminal design in the mind of an otherwise innocent party." Sligh, 142 F.3d at 763 (citing Daniel, 3 F.3d at 778). Rather, Defendant's own statements to the probation officer and the Court at the sentencing hearing show that the criminal design was Defendant's creation. PSR at 6-7; Doc. 22, Ex. A. Second, Defendant's attorney was justified in relying on Defendant's statement to the probation officer and his statement to the Court in determing his strategy at the sentencing

hearing, and thus did not act unreasonably in failing to argue or investigate governmental entrapment as a mitigating circumstance at the sentencing hearing. Based on the information which Defendant agreed to and provided for the purpose to the sentencing hearing, an argument on this point would have been unpersuasive and contrary to the evidence in the case. Thus, Defendant has failed to show that his attorney's performance was deficient for this reason, nor has he shown that any deficient performance was sufficiently poor to undermine the Court's confidence in the outcome of the proceeding.

Accordingly, for these reasons, Defendant's third claim for relief is without merit and is **DENIED**.

### IV. CONCLUSION

For the stated reasons, Defendant's second and third claims for relief as outlined in his Memorandum in support of his § 2255 Motion are **DENIED**. Doc. 20 at 2-3. The Court reaches no conclusion as to the merit of Defendant's first claim for relief. Doc. 20 at 1-2.

The Clerk is **REQUESTED** to mail a copy of this Opinion and Order to all counsel of record and the Defendant.

It is so **ORDERED**.

/s/ Henry Coke Morgan
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

January 17, 2008
Norfolk, Virginia