**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**UNITED STATES OF AMERICA**

v.   Criminal No.: 4:02cr93
     Civil No.: 4:07cv65

**OSWAYNE L. HYDE,**

      **Defendant and Petitioner.**

## OPINION AND ORDER

This matter is before the Court following an evidentiary hearing on Petitioner Oswayne L. Hyde's ("Petitioner" or "Defendant") allegation that his attorney at sentencing, Steven Hudgins ("Hudgins" or "Defendant's counsel"), failed to notice an appeal as requested.

In an Opinion and Order entered January 17, 2008, the Court addressed the merits of two (2) of the three (3) claims contained in Petitioner's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, pursuant to 28 U.S.C. § 2255 ("Defendant's Motion"). Doc. 24. In that Opinion and Order, the Court denied Defendant's second and third claims for relief as outlined in his Memorandum in support of Defendant's Motion. Doc. 20 at 2-3. The Court did not reach a conclusion as to the merit of Defendant's first claim of relief, that his attorney at sentencing failed to notice an appeal as requested. Doc. 20 at 1-2.

On January 17, 2008, the Court appointed counsel to represent Defendant during an

evidentiary hearing to consider Defendant's remaining claim for relief. On April 16, 2008, the Court held an evidentiary hearing regarding Defendant's allegation that his attorney at sentencing failed to notice an appeal as requested. The Court ruled from the bench. After hearing testimony from Defendant, a witness for the Defendant, and Hudgins, the Court **FOUND** that neither Defendant nor anyone associated with him directed Hudgins to file a notice of appeal in Defendant's case. Therefore, Defendant's claim that his sentence be vacated or corrected for ineffective assistance of counsel for failure to notice an appeal is **DENIED** and, accordingly, Defendant's Motion is **DENIED.**

## I. PROCEDURAL AND FACTUAL HISTORY[1]

On July 31, 2002, Defendant was indicted for Distribution of Marijuana, in violation of 21 U.S.C. § 841(a)(1) (Count 1), and Distribution of Cocaine Base, in violation of 21 U.S.C. § 841(a)(1) (Counts 2 and 3). Doc. 1 (Indictment). An arrest warrant was issued on August 1, 2002, and Defendant was eventually arrested on November 25, 2005. Doc. 2 (FED. R. CRIM. PROC. 5(c)(3) Documents from Southern District of Florida filed December 2, 2005); Docket No. 4:02cr93.

On February 1, 2006, Defendant pled guilty to Counts Two (2) and Three (3) of the indictment, and entered into a Plea Agreement with the Government. Doc. 7; Docket No. 4:02cr93. As part of Defendant's Plea Agreement, Defendant waived his right to appeal any lawful sentence, so long as it was within the statutory maximum for the offense to which he

---

[1] This section does not necessarily include the entire procedural and factual history in this case, but rather notes events and information relevant to the issues before the Court. The procedural and factual history relevant to claims two (2) and three (3) of Defendant's motion is included in an Order entered by the Court on January 17, 2008. Doc. 24.

pleaded guilty. Doc. 7 at ¶5. Specifically, paragraph five (5) of the plea agreement states:

> The defendant also understands that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Nonetheless, the defendant knowingly waives the right to appeal the conviction and any sentence within the maximum provided in the statute of conviction (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742 or on any grounds whatsoever, in exchange for the concessions made by the United States in this plea agreement. This agreement does not affect the rights and obligations of the United States as set forth in Title 18, United States Code, Section 3742(b).

Doc. 7 at ¶5. Defendant, Defendant's counsel, and the Special Assistant United States Attorney signed the Plea Agreement. Doc. 7 at 12-13. The initials of all three also appear on page four (4) of the Plea Agreement where the waiver of appeal language is located. Doc. 7 at 4.

At the hearing held on February 1, 2006 where Defendant's guilty plea was accepted, the Court questioned Defendant about the wavier of appeal language included in the Plea Agreement. Specifically, the Court asked Defendant, "After reading the agreement and discussing it with [Defendant's counsel], did you determine that you wanted to enter into the agreement?" Doc. 15 at 11 (Transcript of Hearing on February 1, 2006). Defendant responded, "Yes, sir." Id. Further, the Court asked Defendant, "You understand you're giving up your right to appeal whatever sentence the Court imposes at your sentencing hearing?" Id. To this question, Defendant responded, "Yes, sir." Id.

On May 4, 2006, a hearing was convened and Defendant was sentenced to ninety (90) months' imprisonment to be followed by a five (5) year term of supervised release for both Count Two (2) and Count Three (3), to run concurrently. Doc. 13 at 1-3 (Judgment in a Criminal Case filed May 11, 2006). Also, pursuant to the Plea Agreement, the Government moved to dismiss the remaining count of the Indictment, and the remaining count was dismissed by the Court.

Doc. 13 at 1; Doc. 7 at 6.  At the hearing, Defendant was sworn and confirmed that he reviewed the presentence investigation report, discussed it with his attorney, and believed the report was accurate regarding "the particulars of the offense and [his] background."  Doc. 16 at 2-3 (Transcript of Sentencing Hearing on May 4, 2006).  Defendant also agreed that the United States Sentencing Guidelines ("Guidelines") were "properly computed," and understood the Guidelines recommended a sentence of between eighty-seven (87) and one hundred and eight (108) months.  Id. at 3.  Also the hearing, the Court stated, "I believe that the defendant waived his right to appeal any sentence within the parameters of the statute in his plea agreement. . ." and asked Defendant's counsel whether this was correct.  Id. at 15.  Defendant's counsel responded, "That's correct, Your Honor."  Id.  The Court went on to ask Defendant's counsel, "Has [Defendant] given you any indication that he wishes to appeal notwithstanding that waiver?"  Id. at 15-16.  Defendant's counsel responded, "He has not, Your Honor."  Id. at 16.

    Defendant did not appeal his conviction or sentence.  Docket No. 4:02cr93.

    On May 21, 2007, upon motion by Defendant, the Court extended the time for Defendant to file his § 2255 Motion.  Doc. 18 (Order entered May 21, 2007); Doc. 17 (Motion filed May 3, 2007).  On July 11, 2007, Defendant filed his § 2255 Motion subject to defect, and a supporting Memorandum.  Doc. 19 (Motion); Doc. 20 (Memorandum).  While Defendant failed to sign and swear to the contents of his Motion, Defendant acknowledged in his supporting Memorandum, which contains the substance of his arguments, that his statements were "subject to the penalties of perjury" before signing the same.  Doc. 19; Doc. 20 at 4.  Accordingly, the Court considers Defendant's § 2255 Motion as properly filed.  In Defendant's Memorandum, Defendant claims three bases for relief:

      1.      Defendant's attorney was constitutionally ineffective as counsel for failing "to file a direct appeal after being requested to do so by [Defendant] and his family;"
      2.      Defendant's attorney was constitutionally ineffective for failing "to object to the court's finding that he was a fugitive;" and
      3.      Defendant's attorney was constitutionally ineffective for failing "to investigate and present a sentencing entrapment defense."

Doc. 20 at 1-4.

On November 16, 2007, the United States filed its Response to Defendant's Motion. Doc. 22. On December 26, 2007, Defendant filed his Reply brief. Doc. 23. On January 17, 2008, the Court denied claims two (2) and three (3) of Defendant's Motion. Doc. 24 (Order entered January 17, 2008).

On April 16, 2008, the Court held an evidentiary hearing regarding Defendant's remaining claim for relief. At the hearing, Defendant, Maximina Levonne Saliva Santiago ("Santiago"), and Hudgins testified. The Court now reaches Defendant's first claim for relief.

## II. PROCEDURAL REQUIREMENTS AND STANDARD OF REVIEW

### A. Procedural Requirements

A collateral challenge to a conviction or sentence, such as a motion pursuant to § 2255, "may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982) (citations omitted). Accordingly, for a claim to be viable through a § 2255 petition, it must be raised on direct appeal; however, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." Frady, 456 U.S. at 162, 165; United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999), cert. denied, 529 U.S. 1010 (2000). Similarly, where a contention was not contemporaneously objected to or raised before the trial court, the claim is properly denied as a collateral challenge. Wainwright v. Sykes, 433 U.S. 72,

90-91 (1977). The contemporaneous objection rule is founded by "society's justified interests in the finality of criminal judgments." Frady, 456 U.S. at 175.

However, there are several narrow exceptions to the contemporaneous objection rule. First, the claimant may show "cause" excusing his procedural default, and "actual prejudice" resulting from the complained of action. Frady, 456 U.S. at 167 (citing Wainwright, 433 U.S. at 90-91); Mikalajunas, 186 F.3d at 493 ("The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel."). Second, the petitioner may show, by a greater standard of proof,[2] a constitutional violation resulted in the conviction of a person "actually innocent" of the substantive offense or regarding sentencing in a capital trial. Dretke v. Haley, 541 U.S. 386, 393 (2004) (citations and internal quotations omitted).[3] Regarding a claim of actual innocence of the substantive offense, the petitioner must show he "did not commit the crime of which he was convicted," i.e., he is factually innocent. Mikalajunas, 186 F.3d at 494. Third, the Defendant may prove ineffective assistance of counsel "either as a ground for cause [under exception one] or as a free-standing claim for relief." Dretke, 541 U.S. at 394; United States v. Defusco, 949 F.2d 114, 120-21 (4th Cir. 1991).

Presently, Defendant did not file a direct appeal, and contends his attorney did not file an appeal despite the requests of Defendant and his family. Doc. 19; Doc. 20 at 1; Docket No. 4:02cr93. Defendant asserts his attorney was constitutionally ineffective in failing to file an

---

[2] "[I]n order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence." Mikalajunas, 186 F.3d at 493.

[3] The Fourth Circuit has further held that the actual innocence exception "applies in noncapital sentencing only in the context of eligibility for application of a career offender or other habitual offender guideline provision," and not regarding other sentencing mistakes. Mikalajunas, 186 F.3d at 495.

appeal. Doc. 20. Accordingly, the Court assumes for the purpose of ruling on Defendant's first claim that the claim is procedurally proper.

### B.  Standard of Review

In a § 2255 claim, the petitioner bears the burden of proof, and must establish his claim(s) by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam) (citations omitted). The Court may refuse to grant a hearing if the "files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255 ¶ 2; United States v. Yearwood, 863 F.2d 6, 7 (4th Cir. 1988) (citations omitted).

Under § 2255, the defendant may claim one or more of the following grounds for relief:

1. A violation of the Constitution or laws of the United States;
2. The Court was without jurisdiction to impose such sentence; or
3. The sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255 ¶ 1. Regarding an alleged non-constitutional error of law, the claimed error must constitute "a fundamental defect which inherently results in a complete miscarriage of justice" to be cognizable in a § 2255 petition. United States v. Addonizio, 442 U.S. 178, 185 (1979) (citation omitted). Additionally, the clause that provides, "the sentence . . . is otherwise subject to collateral attack," allows for "claimed errors of fact." Addonizio, 442 U.S. at 185-86. However, a claimed error of fact must be "of the most fundamental character, that is, such as rendered the proceeding itself irregular and invalid." Addonizio, 442 U.S. at 186 (citation omitted). Moreover, the Fourth Circuit has cautioned against reviewing the sufficiency of the evidence upon a § 2255 motion, stating, "[p]risoners adjudged guilty of crime should understand that 28 U.S.C. § 2255 does not give them the right to try over again the cases in which they have

been adjudged guilty." Taylor v. United States, 177 F.2d 194, 194 (4th Cir. 1949) (per curiam); Miller, 261 F.2d at 547 ("[T]he point raised goes to the sufficiency of the evidence which can not be challenged under Section 2255.") (citation omitted).

Lastly, as Defendant was proceeding pro se in this matter when his motion and reply were filed, his filings are entitled to a more liberal standard of review. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), cert. denied, 439 U.S. 99 (1978).

### III. ANALYSIS

Defendant's sole remaining claim is his first claim, "that [his] attorney was ineffective pursuant to the Sixth Amendment of the U.S. Constitution, for failure to file a direct appeal after being requested to do so by [Defendant] and [Defendant's] family." Doc. 20 at 1.

Where a criminal defendant knowingly and intelligently waives his right to challenge any lawful sentence imposed within the applicable Sentencing Guideline range, and the sentence he receives is within that range, the appeal waiver language included in a plea agreement is enforceable. See United States v. Blick, 408 F.3d 162, 173 (4th Cir. 2005). Because the plea agreement Defendant signed included language indicating that he waived his right to appeal, and because the sentence he received was within the applicable sentencing guideline range, any appeal of his sentence likely would lack merit. Therefore, any appeal may very well have constituted a breach of the plea agreement. That, coupled with the fact that an attorney is not constitutionally required to pursue non-meritorious defenses, See Jones v. Barnes, 463 U.S. 745, 754 (1983), results in the conclusion that Defendant's counsel's failure to appeal, by itself, does not meet the constitutional requirements for ineffective assistance of counsel.

Yet, regardless of whether an appeal of Defendant's conviction or sentence would have been meritorious or not, were Defendant's counsel instructed by Defendant to file an appeal, and counsel subsequently did not notice an appeal, such conduct would rise to the level of constitutionally ineffective assistance of counsel. A notice of appeal is a purely ministerial function. See Roe v. Flores-Ortega, 528 U.S. 470 (2000). "[A] criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success." United States v. Peak, 992 F.2d 39, 42 (4th Cir. 1993); Roe, 528 U.S. at 477 (". . .a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."). By contrast, "a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." Roe, 528 U.S. at 477.

No notice of appeal with filed in Defendant's case. Therefore, the central question before the Court is whether Defendant requested that his counsel file an appeal. Defendant's Motion and the Government's response suggest some disagreement between the Defendant and Hudgins regarding whether Hudgins was ever directed to file an appeal.[4] However, all testimony received

---

[4] In his Motion, Defendant states that he and "his family" requested Defendant's counsel "file a direct appeal." Doc. 20 at 1. Defendant states he "had decided to appeal his sentence and had spoken in [sic] many occasions with his counsel about appealing his sentence." Doc. 23 at 3. Further, Defendant states, "[f]amily members for defendant also had spoken to Counsel about the appeal." Doc. 23 at 4. On the basis of these allegations, Defendant concludes that Defendant's "counsel had ignored completely the wishes of his client." Id.

Defendant's counsel, Stephen A. Hudgins, disagrees that he was asked to file an appeal in Defendant's case. Hudgins states, "[a]ppeal was discussed with [Defendant] and his family and it was decided there was no viable issue for appeal and that [Defendant] had agreed not to appeal his case as part of his plea agreement and that noting an appeal would be a violation of that agreement." Doc. 22, Ex. A at ¶ 6 (Affidavit of Steven Hudgins). Hudgins also states that

at the evidentiary hearing held on March 16, 2008 makes clear that neither Defendant nor anyone associated with Defendant ever directed Hudgins to notice an appeal in Defendant's case.

At the evidentiary hearing, Defendant testified that he and Hudgins had a conversation on May 17, 2006 and during that conversation Defendant raised the issue of a possible appeal. Defendant testified that this was the only conversation he had with Hudgins after Defendant's sentencing regarding an appeal. Defendant testified that after he raised the issue of a possible appeal during the May 17, 2006 conversation, Hudgins informed him that he had waived his right to appeal and that any appeal filed would have no merit. At no point during his testimony did Defendant state that despite Hudgins' advice, he specifically directed Hudgins' to file an appeal. In fact, Defendant stated he took Hudgins' advice on this issue; Defendant testified that after Hudgins informed him that he had waived his right to appeal Defendant was satisfied, "just left it at that" and that because Hudgins was his lawyer, Defendant "took his advice."

Hudgins' testimony at the evidentiary hearing regarding the conversation in question was consistent with Defendant's testimony. Hudgins testified that Defendant asked him about a possible appeal when the two met after the Court's written judgment had been entered. Hudgins testified that he told Defendant during this conversation that an appeal was not a viable issue. Hudgins stated that after providing his opinion to Defendant he believed that the two had a mutual understanding that there was no point to appealing Defendant's conviction or sentence

---

"[a]t no time was [he] directed by anyone associated with petitioner to note an appeal." Id. Hudgins adds that "[t]he advisability of appeal was fully discussed with [Defendant] and it was [Defendant's] decision not to appeal." Id. at ¶ 11. Also, at the hearing where Defendant was sentenced, the Court specifically asked Hudgins whether Defendant had given any indication that he wished to appeal notwithstanding the waiver. Doc. 16 at 16. Hudgins stated Defendant had given no such indication. Id.

and that no appeal would be filed. Hudgins was asked directly if Defendant asked him to file an appeal or if he had disregarded a directive to file an appeal. To both questions, Hudgins responded, "absolutely not."

Given both Defendant's and Hudgins' testimony, it is clear that while the two discussed the possibility of an appeal during the conversation in question, Defendant did not direct Hudgins to file an appeal. Neither Defendant nor Hudgins testified that such a directive was given during the conversation. Instead, the testimony suggests that Defendant brought up the issue of a possible appeal, Hudgins provided his opinion that any appeal would be fruitless, Defendant was satisfied, accepted this advice and then "just left it at that." Therefore, the Court **FINDS** that Defendant did not direct Hudgins to file an appeal.

Finding that Defendant did not personally direct Hudgins to file an appeal in Defendant's case, the remaining issue is whether anyone associated with Defendant directed Hudgins to file an appeal. While Defendant alleges in his Motion that "[f]amily members for defendant also had spoken to Counsel about the appeal," Doc. 23 at 4, his testimony at the evidentiary hearing suggests otherwise. Defendant testified that after he was sentenced, he asked his friend "Max" to contact Hudgins about a possible appeal. Defendant's friend "Max" is Maximina Levone Silva Santiago ("Santiago"). Defendant testified that Santiago was the only person he contacted about a possible appeal after his sentencing.

At the evidentiary hearing, Santiago testified that, at some point after Defendant's sentencing, Defendant told her that he wanted to talk to Hudgins about an appeal. Santiago testified that Defendant asked her to relay this message to Hudgins. Santiago stated that she contacted Hudgins during the last week of May 2006. Santiago testified that she briefly informed

Hudgins that Defendant wanted to get in touch with him about appealing his case and then went on to discuss Defendant's immigration status with Hudgins. At no point did Santiago testify that she informed Hudgins that Defendant wanted him to file an appeal or that she directed Hudgins to file an appeal on Defendant's behalf.

Hudgins recollection on his conversation with Santiago comports with her testimony. Hudgins testified that Santiago asked him whether it would be appropriate to appeal in Defendant's case and that he discussed the same factors regarding an appeal that he had discussed with Defendant. Hudgins was asked directly if Santiago ever conveyed to him a directive from the Defendant to file an appeal, to which Hudgins replied, "no." Therefore, on the basis of the testimony of both Santiago and Hudgins, the Court **FINDS** that Santiago did not direct Hudgins to file a notice of appeal in Defendant's case.

### IV. CONCLUSION

For the reasons stated herein, the Court **FINDS** that neither Defendant nor anyone associated with him directed Defendant's counsel to notice an appeal. Accordingly, Defendant's claim that he was denied effective assistance of counsel because his attorney allegedly did not file a notice of appeal after Defendant requested that he do so, is **DENIED**. All three (3) of Defendant's claims in his Motion having been addressed, the Defendant's Motion is **DENIED**.

The Clerk is **REQUESTED** to mail a copy of this Opinion and Order to Defendant, his hearing counsel, his sentencing counsel, and counsel of record for the United States.

Defendant is **ADVISED** that he may appeal this Opinion and Order by forwarding a written notice of appeal to the Clerk, United States District Court, United States Courthouse, 600

Granby Street, Norfolk, Virginia 23510. Said written notice must be received by the Clerk within sixty (60) days from the date of this Order.

    It is so **ORDERED**.

                                        /s/
                        HENRY COKE MORGAN, JR.
                UNITED STATES SENIOR DISTRICT JUDGE

Norfolk, Virginia
April 18, 2008